HoKiNNET, J.,
delivered the opinion of the court.
This was a motion for judgment against the plaintiff’ in error, as sheriff of Davidson county, for a supposed “false” return, on a writ of venditioni exponas.
It appears from the record, that on the 5th day of July, 1850, Greenfield, the defendant in error, sued out an attachment, returnable to the circuit court of Davidson, against one Jones, an absconding debtor.
The attachment was placed in the hands of L. E. Temple, a constable, who returned the same on the day of its issuance, levied on several bureaus, and other *439 articles of household furniture. The attachment was levied on said furniture, in the ware room of one Woods, in Nashville, and the constable, without taking the same into his possession, or for aught that appears, taking any measures for its safe keeping, suffered it to remain in the ware room. The constable died, and the property levied upon was removed and disposed of, but when or how, does not appear. At the January Term, 1851, of the s- circuit court of Davidson, Greenfield recovered judgment on the attachment against Jones for $170. On the 14th of July, 1852, the writ of vencUtioni expolias in question issued, which was returned in proper time nulla Iona to which was added “ the property herein described being removed.”
No exception is taken to the return ttpon its face. The ground of the motion is, that in point of fact, it is at least partially untrue. On the hearing of the motion, by agreement of parties, a jury was empan-nelled to try the question of fact, and on the trial the plaintiff introduced a witness, who in substance stated that he had seen the furniture upon which the attachment was levied at the store room of Woods in Nashville, and that he afterwards saw one of the bureaus, and some other articles of furniture, which he believed to be part of the same furniture seen at the store room of Woods, and levied on by the constable, in the possession of Dr. Warne in Nashville. The witness further stated that he went with- Hyde, the deputy sheriff, in whose hands the writ of venditioni exponas had been placed, to the house .of Dr. Warne, for the purpose of pointing out the furniture upon which Greenfield’s attachment had been levied, that the officer *440 might seize and sell the same, but that he did not go into Dr. Warne’s house; the officer, however, did enter the passage of the house, but finding that the Doctor was absent, he declined to seize the property, and said he would go to the office of Dr. "Warne and notify him of the intended levy. He and witness accordingly went to the Doctor’s office, who upon being informed of the purpose of the officer, replied that the furniture in his house i was his ow%, and that he would permit no one to levy upon it, and that if any one entered his house for such purpose, it would be at his peril.
This is substantially the evidence submitted to the jury, upon which they found that the sheriff’s return was false, and the court adopted the verdict and rendered judgment against the sheriff and his sureties for the amount of Greenfield's judgment, with twelve and one-half per cent damages, from which judgment an appeal in error was prosecuted to this court.
We are not called upon in this case to express any opinion upon the question, whether or not, upon the foregoing facts, the plaintiff would be entitled to maintain an action on the case at common law, against the sheriff for a false return, nor do we deem it proper to do so. Be this as it may, however, we are of opinion that he is not entitled to maintain the present motion, under the act of 1835, ch. 19, § 6. In the application of that statute to a case like the present, its proper meaning and construction have been altogether misapprehended.
The argument in support of the judgment of the circuit court assumes that this proceeding by motion *441 was intended to be a substitute for, or at least a concurrent remedy with tbe common law action on the case for a false return. If this were so, the conclusion would be inevitable, that upon whatever state of facts an action on the case might bxe supported, a motion may be likewise maintained, at the election of the party. But this construction would draw after it, consequences which, in our view, forbid its adoption. The provisions of the statute are most cogent and rigorous, and therefore their application is not to be extended beyond what appears to have been the clear intention of the Legislature. But more than this, we are not to suppose that it was the intention of the legislature to take away the right of trial by jury, in a class of cases involving numerous questions of official duty and integrity, of conflicting titles and right of property, and other perplexing questions of fact, which in the theory of our law, are especially appropriate to that mode of trial. Neither ought we readily to adopt the conclusion that it was intended to change the common law rule of damages in this class of cases, so that-instead of subjecting the officer to liability commensurate with the damages sustained by his wrongful act, he and his sureties should by a positive rule, alike arbitrary and indiscriminate, be made liable for the full amount of the judgment, with a penalty of twelve and a half per cent thereon; and yet all these consequences necessarily result from the construction insisted upon by the counsel for the defendant in error. Such a construction could only be admitted, constitutional objections out of view, upon the ground that the statute was susceptible of none other.
*442 It is clear that in neither of these cases, provided for in the section of the act before referred to, has the court any authority to empannel a jury; no such thing was contemplated, and upon what we consider the proper construction and interpretation of the language of the act, there can be no necessity in calling in the aid of a jury; because the questions, if not purely questions of law, relate to matters of practice, which, both upon principle and established usage, are proper for the determination of the court exclusively, and altogether unfit for a jury.
The cases provided for, are, first, the failure of the sheriff, or other officer, “to make due and proper return of any execution.” Second: his failure “to pay over the money on any execution after the same is, or shall be réturned, satisfied in whole or in part.” And, third, his “making a false, or insufficient return.”
In these cases the act declares that the “ officer and his securities shall be liable to a motion in the circuit court of the county from which the execution issued; and judgment shall be rendered against them for the amount due upon said execution, or for the amount collected by such sheriff, &e., with interest thereon, together with twelve and a half per cent damages.”
Now, as respects the default of the officer in the . two first cases, the non-return of an execution, or the neglect to pay over money received upon an execution, the courts have immemorially exercised the power of coercing the officer to the performance of his official duty by process of contempt or other summary method; and in conferring the power to render a judgment on *443 motion in these cases, all admit tlie propriety of the exclusive exercise of that power by tlie court.
In respect to the motion for a “false or insufficient” return, it becomes necessary to' determine the legal interpretation of these words, or the sense in which they are to be understood, as used in the statute under consideration. We think it clear that they have reference alone to the face, of the return, and in the determination of the question, whether the return be false or insufficient, nothing extrinsic of the return can be looked to. As to an alleged insufficient return, the enquiry is, is it such in point of law? It was so held in Rains vs. Childress, 2 Humph., R., 449. In that case it is said: “ If the return be not insufficient in point of law, that is, if it show an adequate reason why the money was not made, a motion will not lie; if it be thought, notwithstanding his return, that the sheriff has not used proper diligence, or that he has been guilty of negligence, the remedy is by action.” This reasoning, we think, applies with equal force to the case of a motion for a false return. ' The enquiry in the latter case, is, can it be affirmed, as a legal conclusion from the facts stated in the return, that it is false? Eor example, suppose the return shows a levy upon personal property, but it is stated, as is sometimes the case, that there was not time to sell, and yet it appears from the date endorsed on the execution, that ten days or more elapsed between the levy and the return day of the process; in such case, the court can pronounce upon the face of the return that it is false; and so in other cases that sometimes occur. To such cases alone, was this provision of the act intended to *444 apply. And therefore we hold, that in a proceeding by motion for a “false return,” it is not admissible to show by extrinsic evidence, that such return is false in point of fact. For this purpose the party must resort to the common law remedy of an action on the case.
We are aware that the case of Trigg vs. McDonald, 2 Humph., R., 386, seems to sustain the contrary doctrine; but the question as to the proper construction of the act of 1835, does not appear to have been directly made in that case, and we are not satisfied with the decision.
It follows that the judgment'must be'reversed, and the motion dismissed.